

NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed May 19, 2009**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **ODES HO KIM,** | § | |
| | § | **CASE NO. 07-36293-HDH-11** |
| Debtor. | § | |
| | § | |
| **ODES HO KIM** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| -and- | § | |
| | § | |
| **DOME ENTERTAINMENT CENTER, INC.,** | § | |
| | § | |
| Intervenor-Plaintiff, | § | |
| | § | **ADVERSARY NO. 08-03440** |
| v. | § | |
| | § | |
| **CHONG ANN KIM,** | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION ON MOTIONS FOR SUMMARY JUDGMENT

The question presented in this opinion is whether the changes brought about by Bankruptcy

Abuse Prevention and Consumer Protection Act of 2005 affect a Debtor's spouse's homestead

exemption claim. The Court held a hearing on the Motion For Summary Judgment filed by Defendant Chong Ann Kim (the "Kim Summary Judgment Motion") and the Cross-Motion For Summary Judgment filed by Intervenor-Plaintiff Dome Entertainment Center, Inc. (the "Dome Summary Judgment Motion"), and took them under advisement for further consideration and invited supplemental briefing by the parties. After consideration, the Court finds that the Kim Summary Judgment Motion should be denied, and the Dome Summary Judgment Motion Should be granted in part.

## I.    JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 151, and the standing order of reference in this district. The matter is core, pursuant to 28 U.S.C. § 157(b)(2)(A), (B) & (O).

## II.    BACKGROUND

This bankruptcy case was commenced upon the filing of an involuntary petition for relief by Dome Entertainment Center, Inc. ("Dome") against Odes Ho Kim ("Odes Kim" or the "Debtor") on December 21, 2007. Dome is a judgment creditor of the Debtor, with over a $5 million dollar claim in the Debtor's bankruptcy case. Following a trial on the involuntary petition, the Court entered an order for relief under Chapter 7 of the Bankruptcy Code on April 22, 2008. The Debtor subsequently converted the case to a Chapter 11, and now operates as debtor-in-possession.

The Debtor claimed a homestead exemption under Texas law, pursuant to section 522(b)(3)(A) of the Bankruptcy Code, for his residence at 2013 Cottonwood Valley Circle, Irving, Texas 75038 (the "Property"). The Defendant, Anne Kim, is the Debtor's spouse, and also resides at the Property. The Debtor listed the value of the Property on his schedules at $1,127,880.00. Dome objected to the Debtor's claim that the Property was fully exempt, and asserted that the exemption should be limited to an interest not to exceed $136,875.00, pursuant to section 522(p) of

the Bankruptcy Code, which limits a debtor's homestead exemption if the interest in the property was acquired within the 1215-day period preceding the date of the filing of the petition.

The Debtor challenged the applicability of section 522(p) to the involuntary petition filed in the bankruptcy case and the constitutionality of using an involuntary petition to circumvent the homestead protections provided in the Texas Constitution, and stripping the Debtor's spouse of her homestead protections without initiating an adversary proceeding.

The Court sustained Dome's objection to the Debtor's claim of any exemption in the property above the $136,875.00 threshold, but specifically did not address Anne Kim's claims as part of its order, leaving that determination to this proceeding.  The Debtor instituted this adversary proceeding on October 20, 2008 by filing Plaintiff's Original Complaint for Declaratory Judgment to determine the extent of the interest of the Debtor's bankruptcy estate in and to the Property pursuant to 11 U.S.C. section 541, and "to determine what rights, claims, charges, encumbrances and the like that the Defendant has to the Property by virtue of her claim of homestead to the Property under Texas law, including the Texas Constitution and the Texas Property Code."

Dome intervened into this adversary proceeding by agreement of the parties, and both Dome and Defendant have filed summary judgment motions to determine: (1) whether Ann Kim retains an exempt homestead interest in the Property; (2) if she does retain an exempt homestead interest, whether that interest precludes a trustee or debtor-in-possession from forcing a sale of the Property; and (3) if Mrs. Kim retains an exempt homestead interest but that interest does not preclude sale of the Property, whether Mrs. Kim is entitled to remuneration from the bankruptcy estate, and, if so, in what amount.

In response to the Dome Summary Judgment Motion, Mr. and Mrs. Kim assert that a portion of the money used to purchase the Property, $548,128.96, was a distribution of Ann Kim's separate

property from the Kim Family Partnership, Ltd. ("KFP"). Ann Kim owns fifty percent of the KFP as her separate property pursuant to a Marital Property Agreement entered into by Mr. and Mrs. Kim in 1995. Thus, Ann Kim now asserts that 25.65% of the Property is owned by her separately, or constitutes her sole managed community property, and is thus not property of the estate. By agreement of the parties, Ann Kim amended her answer to the complaint and Dome filed an amended complaint in intervention.

These responses raise the additional issues of: (1) whether Mrs. Kim owns a portion of the Property as her separate property, or as sole management community property; (2) if so, whether her separate ownership interest in the property was transferred to the estate; and (3) whether Ms. Kim is entitled to compensation for this separate property interest, should the trustee be able to force a sale of the property. Because these new issues arose after the time of the filing of the initial motions, Dome requested, and the Court allowed some short additional briefing by the parties after the hearing on the summary judgment motions.

## III.    Summary Judgment Standard

Summary judgment is proper if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, and other matters presented to the court show that there is no genuine issue of material fact, and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial burden of articulating the basis for its motion and identifying evidence, which shows that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. at 322; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Material issues are those that could affect the outcome of the action. *Wyatt v. Hunt Plywood, Co. Inc.,* 297 F.3d 405, 409 (5th Cir. 2002).

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.* , 475 U.S. 574, 586-87 (1986); *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1046-47 (5th Cir.1996). The burden is on the non-movant to make a showing sufficient to establish an issue of fact for each element as to which that party will have the burden of proof at trial. *Epps v. NCNB Texas Nat'l Bank,* 838 F.Supp. 296, 299 (N.D. Tex.1993), *aff'd* 7 F.3d 44 (5th Cir.1993) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The nonmovant's burden may not be satisfied by conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, metaphysical doubts as to the facts, or a mere scintilla of evidence; and legalistic arguments are not adequate substitutes for specific facts showing that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 586-87; *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428 (5th Cir. 1996) (en banc); *SEC v. Recile,* 10 F.3d 1093, 1097 (5th Cir.1993); *Wallace,* 80 F.3d at 1047.

The court must draw inferences in the light most favorable to the party opposing the motion. *Anderson*, 477 U.S. at 255. However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), revised on other grounds upon denial of reh'g, 70 F.3d 26 (1995); *see also Wallace,* 80 F.3d at 1048; *S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 494 (5th Cir. 1996). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum,* 66 F.3d at 92. Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record

showing that there is a genuine issue for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th

Cir. 1994) (en banc).

**IV.    Analysis**

      **A.    Homestead Issues**

*Texas Has a Broad Homestead Exemption*

      Except for certain enumerated exceptions, in Texas, a family's urban homestead of up to 10

acres and a rural homestead of up to 200 acres is protected from forced sale, for the payment of all

debts and exempt from seizure for the claims of creditors. *See* TEX. CONST. art. XVI, § 50; *see also*

TEX. PROP. CODE §§ 41.001 and 41.002 (Vernon 2000).

      The Texas Supreme Court has said that the homestead exemption confers on a debtor "a

home as an asylum—a refuge which cannot be invaded nor its tranquility or serenity disturbed. . . .

[It was designed] to cherish and support in the bosoms of individuals, those feelings of sublime

independence which are so essential to the maintenance of free institutions." *Franklin v. Coffee*, 18

Tex. 413, 415-16 (1857).  And it continues to "protect citizens and their families from the miseries

and dangers of destitution." *Id*.

      This Court is well aware that it "must give a liberal construction to the constitutional and

statutory provisions of Texas that protect homestead exemptions. . . [and] must uphold and enforce

the Texas homestead laws even though in so doing we might unwittingly 'assist a dishonest debtor

in wrongfully defeating his creditor.'" *In re Bradley*, 960 F.2d 502, 507 (5th Cir. 1992) (quoting

*Cocke v. Conquest*, 120 Tex. 43, 35 S.W.2d 673, 678 (1931) (additional citations omitted).

However, the Court is also aware that "[a] state is without power to make or enforce any law

governing bankruptcies that . . . conflicts with the national bankruptcy laws." *International Shoe

Co. v. Pinkus*, 278 U.S. 261, 263-64, 49 S.Ct. 108, 109- 10, 73 L.Ed. 318 (1929).  And that "The

power of Congress to establish uniform laws on the subject of bankruptcies throughout the United States is unrestricted and paramount. CONSTITUTION, ART. 1, s 8, cl. 4." *Id.*

### The Bankruptcy Estate

The commencement of a bankruptcy case under § 303 by Dome's filing of an involuntary petition against Mr. Kim created an estate comprised of all property set forth in 11 U.S.C. §§ 541(a)(1) – (a)(7). *See* 11 U.S.C. § 541(a).  This estate includes "all interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is under sole, equal, or joint management control of the debtor." 11 U.S.C. § 541(a)(2)(A).  "As a result of section 541(a)(2), to the extent that community property is subject to equal or joint management and control by the spouses, a petition by one spouse alone passes all of such community property, plus community property under the sole control of the debtor spouse, to the estate." *See* 4 COLLIER ON BANKRUPTCY ¶ 541.13[2] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2005); *see also In re Robertson*, 203 F.3d 855, 859 (5th Cir. 2000).  Thus, to the extent that the Property is either the Debtor's separate property, or is subject to the Debtor's sole or joint management, it is by definition now part of the bankruptcy estate.

Mrs. Kim does not strongly contend with this statement of basic bankruptcy law.  However, she claims the right to assert her Texas homestead exemption in property which the Bankruptcy Code makes property of the estate.

### The Bankruptcy Code Determines Exemptions

The first of Ann Kim's several arguments is essentially that Texas law controls her entitlement to a homestead exemption which is not affected by Mr. Kim's bankruptcy filing, or the limitations placed on Mr. Kim's homestead by virtue of his prepetition activities.  However, it is the federal Bankruptcy law and not Texas state law that ultimately controls.

"A fundamental component of an individual debtor's fresh start in bankruptcy is the debtor's ability to set aside certain property as exempt from the claims of creditors." 4 COLLIER ON BANKRUPTCY ¶ 522.01 (15th ed. rev. 2005). "An exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor." *Owen v. Owen*, 500 U.S. 305, 308, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). Section 522 of the Bankruptcy Code determines what property a debtor may exempt. *See generally* 11 U.S.C. § 522. Section 522(b)(2) allows states to prohibit their citizens from choosing the "federal" exemptions set out in section 522(d). The majority of states have chosen to "opt-out" forcing debtors to utilize their state exemptions. Texas allows debtors to choose either the federal exemptions listed in § 522(d) or state exemptions. Most chose to utilize the state exemptions in Texas because they are more favorable.

To some extent, the use of the term "state" exemptions is a misnomer. It is the federal law that gives the debtors the power to exempt property out of the estate in § 522, gives the states the power to opt-out in § 522(b)(2), and determines the applicable state law under §522(b)(3). The Bankruptcy Code has always controlled the exemptions that debtors are allowed to claim; however, until the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "BAPCPA"), the current Code has basically left it up to each individual state to determine the exemptions allowable under §522(d). The enactment of the BAPCPA represented a "sea change" with respect to state law homestead exemptions claimed in a bankruptcy case. *See In re Sissom* 366 B.R. 677, 714 (Bankr. S.D. Tex. 2007). As stated by Judge Bohm in *Presto*:

> The Debtor's election of state law exemptions does not necessarily mean that state law would determine how to apply the funds. The Supreme Court has stated, "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (quoting *Lewis v. Mfrs. Nat'l Bank*, 364 U.S. 603, 609, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961)). The Fifth Circuit "has interpreted *Butner* to

extend deference to state law whenever Congress has the authority to regulate an area under its bankruptcy powers but has chosen not to do so." *Anderson v. Conine (In re Robertson)*, 203 F.3d 855, 859 (5th Cir. 2000) (*citing In re Hudson Shipbuilders*, Inc., 794 F.2d 1051 (5th Cir.1986)). By enacting § 522(p), Congress has exercised its authority to regulate homestead exemptions in a way that directly conflicts with Texas law.

***

Although BAPCPA maintained the two-track system of exemptions, which allows states such as Texas to permit debtors to select either state or federal exemptions, the addition of §§ 522(o), (p), and (q) demonstrates Congress' intent to prevent states from having unlimited and unregulated homestead exemptions. This is particularly true of § 522(p), which imposes a strict limit on the exempt interest in homesteads acquired within 1215 days of filing regardless of the homestead laws of the debtor's state.

*In re Presto*, 376 B.R. 554, 585 (Bankr. S.D. Tex. 2007).

Section 522(p) was one of the new provisions added by the BAPCPA that Congress intended to close the so-called "mansion loophole" granted to debtors of certain states who move to take advantages of these states' virtually unlimited homestead exemptions. *See In re Blair*, 334 B.R. 374, 377-78 (Bankr. N.D. Tex. 2005).[1] Section 522(p) provides in pertinent part:

(1) Except as provided in paragraph (2) of this subsection and sections 544 and 548, as a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of interest that was acquired by the debtor during the

---

[1] The legislative comments state that the amended Section 522(p) restricts the "mansion loophole." HR Rep. 109-31(I), 109th Cong., 1st Sess. 2005, 2005 U.S.C.C.A.N. 88, 2005 WL 832198 *15-16 (2005). Congress briefly explains:

Under current bankruptcy law, debtors living in certain states can shield from their creditors virtually all of the equity in their homes. In light of this, some debtors actually relocate to these states just to take advantage of their mansion loophole laws. S.256 [BAPCPA] closes this loophole for abuse by requiring a debtor to be a domiciliary in the state for at least two years before he or she can claim that state's homestead exemption; the current requirement can be as little as 91 days.

*Id*. Although provision, as enacted, is only directed at prohibiting the full exemption of mansions acquired within approximately 40 months of bankruptcy. *See In re Virissimo*, 332 B.R. 201, 207 (Bankr. D. Nev. 2005) (legislative history further explains that: If the debtor owns the homestead for less than 40 months, the provision imposes a homestead cap).

  Section 522(o) similarly affects the limit for a homestead exemption when a debtor has engaged in conduct or has made payments with the intent to hinder, delay or defraud a creditor. *See* 11 U.S.C. § 522(o)(4).

1215-day period preceding the date of the filing of the petition that exceeds in the aggregate $136,875 in value in—

    (A)   real or personal property that the debtor or a dependent of the debtor uses as a residence;

    (B)   a cooperative that owns the property that the debtor or a dependent of the debtor uses as a residence;

    (C)   a burial plot for the debtor or a dependent of the debtor; or

    (D)   *real or personal property that the debtor or dependent of the debtor claims as a homestead*.

11 U.S.C. § 522(p) (emphasis added). To the extent the Property became property of the estate, the exemption amount is therefore limited to $136,875. Contrary to Mr. and Mrs. Kim's position on this issue, it was the intent of Congress to override state exemption law in this area. *See* HR Rep. 109-31(I), 109th Cong., 1st Sess. 2005 n.72, 2005 U.S.C.C.A.N. 88 (2005) ("In effect, this provision overrides state exemption law authorizing a homestead exemption in excess of this amount and allows such law to control if it authorizes a homestead exemption in a lesser amount.").[2]

*Debtor's Spouse's Homestead Interest Is Not Protected*

      Ann Kim's next argument is that she has a separate vested homestead property right that is exempt, and that this exemption is not subject to the limit provided by § 522(p) because she has not filed a bankruptcy petition. This argument has been rejected by at least one other court in Texas. *See H.D. Smith Wholesale Drug Co.v. McCombs (In re McCombs)*, No. 07-3043, 2007 WL 4411909 (Bankr. S.D. Tex. Dec. 17, 2007). The Court agrees the court's analysis in *McCombs*. Only the Debtor may exempt property that has become property of the estate, which "effectively

---

[2] This was also one of the recommendations of The Bankruptcy Review Commission that concluded that the homestead exemption needed to be capped. *See* NAT'L BANKR. REVIEW COMM'N, BANKRUPTCY: THE NEXT TWENTY YEARS 124 (1997), *available at* http://govinfo.library.unt.edu/nbrc/reportcont.html ("Unlimited homesteads have led to national ridicule and the efforts of some less needy and better represented families to find literal and figurative shelter in generous states.")

eliminates the rights of a non-debtor spouse to manage and control community property." *In re Rodriguez*, 353 B.R. 144, 149 (Bankr. N.D. Tex. 2006). "The Bankruptcy Code makes no provision for a non-debtor to claim an exemption from the estate." *In re Duncan*, 294 B.R. 339, 344 (10th Cir. BAP 2003). There is also no provision for compensation for the non-filing spouse's property interest. *See In re McCombs*, 2007 WL 4411909 *7; *see also In re Lang*, 191 B.R. 268, 272 (Bankr. D. Puerto Rico 1995). As explained recently by the Fifth Circuit, "Under Texas law, '[t]he homestead interest is a legal interest created by the constitution that provides prophylactic protection from all but [a few] types of constitutionally permitted liens against homesteads. This interest . . . gives protective legal security rather than vested economic rights.'" *In re Rogers*, 513 F.3d 212, 224 (5th Cir. 2008) (quoting *Heggen v. Pemelton*, 836 S.W.2d 145, 148 (Tex. 1992).

This homestead protection is afforded under Texas state law to protect debtors from the claims of creditors. *See* TEX. CONST. art. XVI, § 50; *see also* TEX. PROP. CODE § 41.002 (Vernon 2000). It does not create a vested property interest that would provide an argument for compensation. *See In re Rogers*, 513 F.3d at 224. Thus, Mrs. Kim has no separate and distinct exempt homestead interest in the property that would entitle her to compensation or to prevent the sale of the Property.

Had Congress wished to protect a spouse's homestead exemption in property subject to § 522(p), it could have provided protections similar to § 522(q)(2), also enacted with the BAPCPA amendments, which limits its applicability to the extent the property is necessary for the support of the debtor and any dependents of the debtor.[3] Accordingly, summary judgment will be granted in favor of Dome on Mrs. Kim's claim of a separate exempt homestead interest.

---

[3] Although the Code's language and legislative history are not illuminating on this point, neither section 522(p) nor section 522(o) contains a subsection protecting a dependent's rights. At first blush, this result may appear harsh. However, the facts presented in this case largely are those which prompted

**B.     Issues Regarding Protection of Mrs. Kim's Separate Property Interest**

Ms. Kim's last set of arguments revolve around her separate interest in the Property, if any, created by a portion of the purchase price being paid from the Kim Family Partnership. If this results in a portion of the property being her separate property, or sole managed community property, it may not be part of the estate created by § 541, since the estate only includes "all interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is under sole, equal, or joint management control of the debtor." 11 U.S.C. § 541(a)(2)(A). The summary judgment evidence before the Court is not conclusive on this issue.

*State Law Defines Property Interests*

The term "community property" is not defined in the Bankruptcy Code, but it is a "term of art referring to that certain means of holding marital property in those states which have adopted a community property system." *In re Robertson*, 203 F.3d 855, 859 (5th Cir. 2000) (citations omitted). Generally, Congress has left the creation and definition of property interests of a debtor's bankruptcy estate to state law. *Id*. (citing *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.")). Thus, "the ultimate characterization of property as either community or separate is determined by applicable state law, and that determination establishes what interest, if any, the bankruptcy estate has in the property." *Id*.

---

Congress to place the limitations on a debtor's homestead exemption in § 522(p). Mr. Kim has a large judgment against him in California. After the judgment, he and his wife moved to Texas and bought an expensive house, which would be totally exempt under state law. After the order for relief was entered, the limits of § 522(p) now apply, which seems to fall in line with Congress' intent to close the mansion loophole.

In Texas, all marital property is either separate or community. *Hilley v. Hilley*, 342 S.W.2d 565, 567 (Tex. 1961). Separate property is defined by the Texas Constitution as property acquired before marriage or during marriage by gift, devise, or descent. TEX. CONST. ART. XVI, § 15. Community property consists of the property, other than separate property, acquired by either spouse during marriage. TEX. FAM.CODE ANN. § 3.002 (Vernon 2006). Property possessed by either spouse during their marriage is presumed to be community property. TEX. FAM.CODE ANN. § 3.003(a) (Vernon 2006). Property purchased during the marriage with separate funds is separate property. *See Hilley v. Hilley*, 342 S.W.2d at 567. However, to overcome the statutory presumption, a spouse claiming assets as separate property is required to establish their separate character by clear and convincing evidence. TEX. FAM. CODE ANN. § 3.003(b) (Vernon 2006). A party may overcome this presumption by tracing and identifying the separate property. *Cockerham v. Cockerham*, 527 S.W.2d 162, 167 (Tex.1975).

During marriage, property is presumed to be subject to the sole management, control, and disposition of a spouse if it is held in that spouse's name. TEX. FAM.CODE ANN. § 3.104(a) (Vernon 2006). If community property subject to the sole management, control, and disposition of one spouse is mixed or combined with community property subject to the sole management, control, and disposition of the other spouse, then the mixed or combined community property is subject to the joint management, control, and disposition of the spouses, unless the spouses provide otherwise by power of attorney in writing or other agreement. TEX. FAM.CODE ANN. § 3.102(b) (Vernon 2006).

Mr. and Mrs. Kim are have been married since January 23, 1986. The Kim Family Partnership, Ltd. contains assets of both spouses that have been partitioned equally into each spouse's separate property, as permitted under Texas law. *See* TEX. FAM.CODE ANN. § 4.102

(Vernon 2006). The summary judgment evidence indicates that Mr. Kim paid the escrow and survey payments with either his separate funds or community funds. At closing, he made a $500,000.00 payment from community funds and had the remainder wired from the Kim Family Partnership Account. There is a dispute as to whether the money from the Kim Family partnership was a loan or a distribution. Mr. Kim has contradicted himself on this point between the time of the involuntary bankruptcy filing and his response to the Dome Summary Judgment Motion. The tax returns filed by the Kim Family Partnership do not list the transfer as a distribution; however Ms. Kim's affidavit in support of her response to the Dome Summary Judgment Motion states that this was a distribution, one-half of which represents her separate property.

It is presumed that one spouse intends to make a gift to the other spouse of one-half of a separate contribution made to purchase real estate during marriage when the title to the property is taken in the name of both spouses. *Cockerham*, 527 S.W.2d at 168; *In re Marriage of Thurmond*, 888 S.W.2d 269, 273 (Tex.App.-Amarillo 1994, writ denied). The gift is presumed to be to the other spouse rather than the community estate because it is not possible for a spouse to make a gift to the community estate. *Tittle v. Tittle*, 148 Tex. 102, 220 S.W.2d 637 (1949). Where one spouse conveys real property to the other spouse, or pays separate property consideration for real property and takes title in the name of the other spouse alone, there is a rebuttable presumption of a gift. *See Cockerham,* 527 S.W.2d 162 (Tex. 1975); *Kahn v. Kahn*, 94 Tex. 114, 58 S.W. 825 (1900).

Property purchased with separate and community funds is owned as tenants in common by the separate and community estates. *See Cockerham*, 527 S.W.2d 162 (Tex. 1975); *Scott v. Scott*, 805 S.W.2d 835 (Tex. App. Waco 1991), writ denied, (June 19, 1991). If the facts are as the Kims suggest, then a tenancy in common exists as to the Property. This tenancy in common would result in legal title being held in the name of Mr. Kim, with equitable title being held in both the name of

the community and Mrs. Kim separately.  This creates a resulting trust under Texas law in favor of

Mrs. Kim for her separate property that was used to purchase the Property.  *See In re Marriage of*

*Thurmond*, 888 S.W.2d 269, 273 (Tex.App.-Amarillo 1994, writ denied) (citing *Goddard v.*

*Reagan*, 28 S.W. 352, 353 (Tex.Civ.App.-San Antonio 1894, no writ); *Cohrs v. Scott*, 161 Tex. 111,

338 S.W.2d 127, 130 (1960); *Blum v. Rogers*, 71 Tex. 668, 9 S.W. 595, 597 (1888); *Parker v.*

*Coop*, 60 Tex. 111, 116 (1883); *Ford v. Simpson*, 568 S.W.2d 468, 470 (Tex.Civ.App.-Waco 1978,

no writ); *Robbins v. Robbins*, 519 S.W.2d 507, 509 (Tex.Civ.App.-Fort Worth 1975, no writ);

*Penman v. Blount*, 264 S.W. 169, 170 (Tex.Civ.App.-Beaumont 1924, no writ)).

*Section 544 "Strong-Arm" Powers Cannot Be Used To Defeat This Interest*

Dome argues that to the extent Mrs. Kim holds any equitable title to the property as her

separate property, this interest is unrecorded, and therefore comes into the estate pursuant to the

trustee's "strong arm powers" under Section 544(a)(3).  *In re Jones*, 77 B.R. 541, 544 (Bankr. N.D.

Tex. 1987) (holding that unrecorded ownership interests are junior to the estate's Section 544(a)

strong arm power) (Akard, J.).

While it is true that a bona fide purchaser cuts off the unrecorded interests of a resulting trust

holder under Texas law, *See Lang v. Shell Petroleum Corp.*, 141 S.W.2d 667, 672 (Tex.Civ.App.

1939); *see also Commercial State Bank v. Blackwell*, 61 S.W.2d 563, 565, (Tex. Civ. App. 1933), it

is not the law in the Fifth Circuit.  *See In re Haber Oil Co.*, 12 F.3d 426, 435-36 (5th Cir. 1994).

Under § 541(d), if a debtor holds only legal title and not an equitable interest in property at

the commencement of the bankruptcy case, that property becomes property of the estate "only to the

extent of the debtor's legal title to such property, but not to the extent of any equitable interest in

such property that the debtor does not hold."  11 U.S.C. § 541(d).  Dome asserts that § 544 trumps §

541(d), and thus the strong-arm powers can be used by a trustee or debtor in possession to defeat an

equitable trust held in real property, similar to the operation of Texas state law, because of the trustee's bona fide purchaser status. However, as stated before, federal bankruptcy law controls what property comes into and goes out of the estate, even though state law may determine a property's characterization. The Fifth Circuit has determined that § 541(d) controls. *See Haber Oil Co.*, 12 F.3d 435-36 ("Because § 541(d) excludes property subject to a constructive trust from the bankruptcy estate, we have also held that § 541(d) prevails against the trustee's strong-arm powers under § 544.") (citations omitted); *see also In re Quality Holstein Leasing, 752* F.2d 1009, 1013 (5th Cir. 1985). Thus, a fact issue surrounding the nature of Mrs. Kim's interest in the Property exists that would determine the outcome of this issue, and summary judgment must be denied as to this issue.

*The Trustee's Ability To Sell The Property*

Ms. Kim also asserts that a hypothetical trustee, or debtor-in-possession lacks authority to sell either her homestead interest, or her separate property interest created by the fact that funds from the Kim Family Partnership were used as part of the purchase money for the Property. As discussed above, to the extent the Property is community property not subject to her sole management, it is property of the estate pursuant to § 541(a)(2)(A), and is subject to sale under section 363(b)(1). See 11 U.S.C. 363(b)(1). To the extent there is a resulting trust in favor of Mrs. Kim creating a tenancy in common, the property would be subject to sale pursuant to § 363(h), provided all of its conditions are met. Section 363(h) provides:

> (h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—
> (1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h). Should this be the case, Mrs. Kim will have the right to purchase the property at the trustee's proposed sale price. *See* 11 U.S.C. § 363(i). And she would be entitled to a percentage of the proceeds of sale according to her interest. 11 U.S.C. § 363(j). However, these issues will have to be explored at trial.

## V.     Conclusion

Since a fact issue exists as to the nature of Ann Kim's interest in the Property as to the wire transfer from the Kim Family Partnership, the Dome Summary Judgment will be granted in part. The Court will issue a separate order denying the Ann Kim Summary Judgment Motion and Granting the Dome Summary Judgment Motion in part.

Because some of the issues raised by these motions involve questions of how a recently enacted Bankruptcy Code provision interacts with Texas homestead law, and these issues have not been addressed by either the Supreme Court or Fifth Circuit, and an immediate appeal may materially advance the progress of the bankruptcy proceeding, the Court would consider certifying this decision for direct appeal to the Circuit, pursuant to 28 U.S.C. 158(d)(2). The Fifth Circuit has recently decided that this statute permits direct appeals from interlocutory orders of bankruptcy courts. *In re OCA, Inc.*, 552 F.3d 413, 418 (5th Cir. 2008).

###End of Opinion###